UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **DEANETTE STANLEY** | **CASE NO. 2:22-CV-06170** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **C L H G - DEQUINCY L L C** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM RULING

Before the Court is a "Motion for Summary Judgment" (Doc. 36) filed by Defendant, CLHG-DeQuincy, LLC d/b/a DeQuincy Memorial Hospital ("DMH") wherein Defendant moves to dismiss this lawsuit with prejudice because Plaintiff cannot prove a violation of 42 U.S.C. § 1395(dd), the Emergency Medical Treatment and Labor Act ("EMTALA").

## BACKGROUND

On December 15, 2020, at approximately 5:00 p.m., Robert Vernon Stanley presented to DeQuincy Memorial Hospital ("DMH"). Plaintiff testified that Mr. Stanley had complaints of heart attack-like symptoms.[1] Mrs. Stanley drove her husband to DMH; Mr. Stanley was in the passenger seat.[2] When they arrived, Plaintiff testified that in the ER Pavilion, they were met by DMH employee, Laiken Stanley, who advised Mr. Stanley that he was not allowed into the hospital, he was to remain in his vehicle, and that he could not be seen.[3]

---

[1] Defendant's exhibit 4. Deanette Stanley deposition, pp. 38-51.
[2] *Id.*
[3] *Id.*

Mrs. Stanley testified that she informed Laiken that she did not feel comfortable leaving because she did not know what was going on with Mr. Stanley's symptoms.[4] The employee then returned inside the hospital, presumably to notify healthcare personnel of Mr. Stanley's condition.[5]

Subsequently, DMH employee, Ellen Naquin, RN came from the hospital to attend to Mr. Stanley and instructed that he remain in the vehicle.[6] Nurse Naquin spoke to Mr. Stanley through the car window on the driver's side.[7] Mr. Stanley advised Nurse Naquin that he might be suffering a heart attack, and that he wanted to be assured that he was not having a heart attack.[8]

Mrs. Stanley testified that Mr. Stanley described his symptoms to Nurse Naquin, including, panting, blacking out, tightness in his chest, and shortness of breath, and informed her that he was concerned that he was having a heart attack.[9] Mrs. Stanley further testified that Nurse Naquin did not perform a nursing assessment, obtain vital signs or attempt to perform any sort of examination of Mr. Stanley.[10]

Instead, Nurse Naquin assured Mr. Stanley that he was not having a heart attack and that his symptoms were probably related to blood sugar issues, that he would be "fine,"

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.* pp. 39-52, 59.

and that he would not be seen in the hospital.[11] Nurse Naquin advised Mr. Stanley to go and buy a blood sugar test kit.[12]

Relying on Nurse Naquin's advice, the Stanleys left DMH and purchased a blood sugar test.[13] The test revealed that Mr. Stanley's blood sugar was normal; the Stanley's then returned home.[14]

After returning home, Mr. Stanley began feeling poorly, which prompted Mrs. Stanley to call the ER at DMH.[15] Mrs. Stanley spoke with Debbie Rouser, RN, and informed her that Mr. Stanley's blood sugar was fine.[16] Nurse Rouser advised Mrs. Stanley that Mr. Stanley was not having a heart attack but was suffering from a stomach virus.[17]

While still on the phone with Nurse Rouser, Mr. Stanley began shaking and fell on the floor.[18] Mrs. Stanley hung up the phone with Nurse Rouser and immediately called 911 at 10:53 p.m.[19] Acadian Ambulance arrived and transferred Mr. Stanely into the ambulance.[20] Mr. Stanley suffered a cardiac arrest and died in the ambulance before he arrived at any hospital.[21] Mr. Stanley's cause of death is noted as hypertensive cardiovascular disease.[22]

---

[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.* p. 58.
[15] *Id.* pp. 58, 66-74.
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.* p. 75-81.
[21] *Id.*
[22] Defendant's exhibit E.

A majority of the above testimony by Mrs. Stanley is disputed by Defendant. Specifically, Nurse Naquin denies not allowing Mr. Stanley to come into the hospital; she testified that she told him several times that if he came inside, they could further evaluate him for his complaints, but that he did not want to do so.[23]

Ms. Stanley also testified that at the end of the conversation with Nurse Naquin, and after being advised by Nurse Naquin that Mr. Stanley was not having a heart attack, Nurse Naquin told her that they could come in but would have to wait outside for an unknown amount of time.[24] Again, the Court notes that many of these facts are disputed by Defendant.

In her Complaint, Mrs. Stanley alleges that Defendant violated the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 USCA § 1395dd.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

---

[23] Defendant's exhibit D, pp. 24-26, 34-36, 47.
[24] Defendant's exhibit B, Stanely Deposition, pp. 42-43, 46-48, 110-112.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

Plaintiff claims that DMH violated the EMTALA when she presented her husband to the Emergency Department ("ED") and was allegedly turned away without entrance into the hospital Ed, and/or being assessed. That same day he died.

Plaintiff must prove by a preponderance of the evidence that: (1) Mr. Stanley came to the ED at DeQuincy Memorial; (2) either Mr. Stanley or someone acting on his behalf requested examination or treatment for a medical condition, or a prudent layperson

observer would reasonably believe, based on Mr. Stanley's appearance or behavior, that he required emergency examination or treatment; (3) DeQuincy Memorial failed to provide Mr. Stanley with an appropriate medical screening examination; and (4) Mr. Stanley suffered personal harm as a direct result of DeQuincy Memorial's failure to provide an appropriate medical screening examination. 42 U.S. C.A. § 1395fdd; 42 C.F.R. § 489.24(b).

Defendant argues that the is no evidence that would create a genuine issue of fact for trial that Mr. Stanley requested an examination and treatment for his medical condition and was refused entry into the facility.  The Court disagrees.  Mrs. Stanley has testified that she brought her husband to the DeQuincy hospital because he believed he might be having a heart attack. Her deposition testimony reveals that the Stanley's drove from Westlake to DeQuincy to seek treatment.  Mrs. Stanley also testified that when the first DMH employee informed her that they could not go in, she insisted that she get someone to come outside and assist her husband and that she did not feel comfortable leaving with the symptoms he was experiencing.

Also troubling is the fact that Nurse Naquin only spoke to Mr. Stanley through the driver's side window as he was sitting in the passenger seat, and she failed to make any assessments at all.  She did not take his temperature, take vital signs, feel his forehead, ... nothing. In other words, there was no medical screening examination at DMH. Mrs. Stanley also testified that they left the hospital only after Nurse Naquin told him that he was fine and not having a heart attack, and that he should test his blood sugar, (the Court notes that these are issues of dispute).

Page **6** of **7**

Next, Defendant argues that Plaintiff cannot show that the refusal to allow a medical screening examination directly caused Mr. Stanley's subsequent death because Plaintiff does not have an expert. The Court disagrees. Mr. Stanley's death certificate indicates his cause of death was "hypertensive cardiovascular disease."

## CONCLUSION

For the reasons explained herein, the Court finds that there are genuine issues of material fact for trial and will deny the Motion for Summary Judgment (Doc. 36).

**THUS DONE AND SIGNED** in Chambers on this 15th day of September, 2025.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE